UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | | |
|---|---|---|
| NATASHA SMITH-STEVENS, | ) | |
|     Plaintiff, | ) | |
| | ) | |
|     v. | ) | CAUSE NO.: 1:19-CV-85-JEM |
| | ) | |
| ANDREW M. SAUL, | ) | |
| Commissioner of the Social Security | ) | |
| Administration, | ) | |
|     Defendant. | ) | |

**OPINION AND ORDER**

This matter is before the Court on a Complaint [DE 1], filed by Plaintiff Natasha Smith-Stevens, *pro se*, on June 14, 2018, and Plaintiff's Opening Brief [DE 25], filed February 25, 2020. Plaintiff requests that the decision of the Administrative Law Judge be reversed and requests an award of benefits. On July 7, 2020, the Commissioner filed a response, and on July 13, 2020, Plaintiff filed a letter [DE 32] that the Court construes as a reply. For the reasons described below, the Court remands this matter for further proceedings.

**I.    Background**

On October 2, 2015, Plaintiff filed an application for benefits, alleging disability beginning June 1, 1995. The alleged onset date was later amended to October 2, 2015. Plaintiff's application was denied initially and upon reconsideration. On September 11, 2017, Administrative Law Judge ("ALJ") John Carlton held a video hearing, at which Plaintiff, with counsel, and a vocational expert ("VE"), testified. On February 27, 2018, the ALJ issued a decision finding that Plaintiff was not disabled.

The ALJ made the following findings under the required five-step analysis:

1

1. The claimant has not engaged in substantial gainful activity since October 2, 2015, the alleged onset date.

2. The claimant has the following severe impairments: fibromyalgia; chronic pain syndrome; carpal tunnel; depression and anxiety.

3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.

4. The claimant has the residual functional capacity ("RFC") to perform light work as defined in 20 CFR 416.967(b) except as reduced by the following. Additional limitations include no more than occasional balancing, stooping, and crouching, overhead reaching, climbing of ramps and stairs, but no crawling, kneeling or climbing of ladders, ropes or scaffolds, no working on slippery uneven surfaces or at unprotected heights, or around dangerous machinery and no driving of a motor vehicle as a condition of employment. The claimant is further limited to no more than frequent bilateral fingering, handling and feeling. Finally, the claimant is limited to simple and routine work not done at a production rate pace, and she can interact and react appropriately with supervisors and co-workers on a frequent basis and with the general public on an occasional basis.

5. The claimant has no past relevant work.

6. The claimant was 47 years old, which is defined as a younger individual age 45-49, on the disability onset date. The claimant subsequently changed age category to closely approaching advanced age.

7. The claimant has at least a high school education and is able to communicate in English.

8. Transferability of job skills is not an issue because the claimant does not have past relevant work.

9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

10. The claimant has not been under a disability, as defined in the Social Security Act, from October 2, 2015, through the date of this decision.

The Appeals Council denied Plaintiff's request for review, leaving the ALJ's decision the final

2

decision of the Commissioner.

The parties filed forms of consent to have this case assigned to a United States Magistrate Judge to conduct all further proceedings and to order the entry of a final judgment in this case. Therefore, this Court has jurisdiction to decide this case pursuant to 28 U.S.C. § 636(c) and 42 U.S.C. § 405(g).

## II.     Standard of Review

The Social Security Act authorizes judicial review of the final decision of the agency and indicates that the Commissioner's factual findings must be accepted as conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Thus, a court reviewing the findings of an ALJ will reverse only if the findings are not supported by substantial evidence or if the ALJ has applied an erroneous legal standard. *See Briscoe v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (quoting *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003)).

A court reviews the entire administrative record but does not reconsider facts, re-weigh the evidence, resolve conflicts in evidence, decide questions of credibility, or substitute its judgment for that of the ALJ. *See Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005); *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000); *Butera v. Apfel*, 173 F.3d 1049, 1055 (7th Cir. 1999). Thus, the question upon judicial review of an ALJ's finding that a claimant is not disabled within the meaning of the Social Security Act is not whether the claimant is, in fact, disabled, but whether the ALJ "uses the correct legal standards and the decision is supported by substantial evidence." *Roddy v. Astrue,* 705 F.3d 631, 636 (7th Cir. 2013) (citing *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 618 (7th Cir.

2010); *Prochaska v. Barnhart*, 454 F.3d 731, 734-35 (7th Cir. 2006); *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004)). "[I]f the Commissioner commits an error of law," the Court may reverse the decision "without regard to the volume of evidence in support of the factual findings." *White v. Apfel*, 167 F.3d 369, 373 (7th Cir. 1999) (citing *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997)).

At a minimum, an ALJ must articulate his or her analysis of the evidence in order to allow the reviewing court to trace the path of her reasoning and to be assured that the ALJ considered the important evidence. *See Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002); *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995); *Green v. Shalala*, 51 F.3d 96, 101 (7th Cir. 1995). An ALJ must "'build an accurate and logical bridge from the evidence to [the] conclusion' so that, as a reviewing court, we may assess the validity of the agency's final decision and afford [a claimant] meaningful review*." Giles v. Astrue*, 483 F.3d 483, 487 (7th Cir. 2007) (quoting *Scott*, 297 F.3d at 595); *see also O'Connor-Spinner*, 627 F.3d at 618 ("An ALJ need not specifically address every piece of evidence, but must provide a 'logical bridge' between the evidence and his conclusions."); *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001) ("[T]he ALJ's analysis must provide some glimpse into the reasoning behind [the] decision to deny benefits.").

## III.   Analysis

Plaintiff filed a single-page letter as an opening brief, requesting that this Court reverse the ALJ's decision and award benefits. Because the letter does not articulate a specific basis for reversing the decision, the Court assesses whether the ALJ's decision was supported by substantial evidence.

At steps two and three of the evaluation process, the ALJ found that Plaintiff's impairments

4

did not meet or medically equal an impairment listed in the Social Security regulations. *See* 20 C.F.R. §§ 404.1520(a)(4)(iii); 416.920(a)(4)(iii). An individual suffering from an impairment that meets the description of a listing or its equivalent is conclusively presumed to be disabled. *See Bowen v. Yuckert*, 482 U.S. 137, 141 (1987). In order "[f]or a claimant to show that his impairment matches a listing, it must meet *all* of the specified medical criteria." *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990). An impairment that manifests only some of the criteria will not qualify, no matter its severity. *Id.*

Specifically, the ALJ found that Plaintiff's severe mental impairments did not meet or medically equal the criteria of Listings 12.04 ("Depressive, bipolar, and related disorders") and 12.06 ("Anxiety and obsessive-compulsive disorders"). The criteria for those listings changed on January 17, 2017, which was after the state agency consultants gave their opinions (the last issuing in June 2016), but before the ALJ's February 27, 2018 decision. For example, where the prior criteria emphasized limitations of "activities of daily living" and "social functioning," the updated criteria discuss the ability to "understand, remember, and apply information," "interact with others," and "adapt or manage oneself." *See* 20 C.F.R. 404, Subpt. P, App. 1, § 12.04, 12.06 (updated criteria); 81 Fed. Reg. 66138, 2016 WL 5341732 (Sept. 26, 2016) (prior criteria). The ALJ found that Plaintiff did not meet the listings under either set of criteria.

Because the state agency consultants did not evaluate Plaintiff under the updated listing criteria, and because there was significant new medical evidence regarding Plaintiff's mental impairments, the ALJ should have sought an updated opinion. Plaintiff alleged depression and anxiety, and the February 2016 report of the agency's mental status examiner concluded: "Her history and current presentation suggest the presence of both anxiety and depression, manifested by

5

dysphoria, poor motivation, social withdrawal . . . As a worker, her attendance and productivity would likely be poor." AR 469. However, there was little evidence in the medical record of mental health treatment. In March and June 2016, the state agency consultants, citing the mental status exam, nonetheless found that Plaintiff's anxiety and depression were non-severe impairments, because while her "allegations appear credible and consistent . . . the medical evidence does not support the intensity of the limitations expressed." AR 196, 209. In April 2017, Plaintiff was referred for mental health treatment and counseling after being placed on house arrest. Over several months of treatment, the medical providers confirmed the diagnoses of depression and anxiety disorders, indicating that they had been ongoing for many years and caused her "significant functional impairment." *E.g.,* AR 1106-07.

The ALJ acknowledged that he assessed Plaintiff under the new listing criteria without the benefit of an updated medical opinion accounting for the new evidence. In finding that Plaintiff did not meet the updated criteria, the ALJ granted "some weight" to the agency consultants because their opinions were outdated, but he concluded that Plaintiff's condition had improved since June 2016. AR 18. This explanation was internally contradictory, because the consultants found in June 2016 that Plaintiff's impairments were non-severe, but the ALJ found that they were severe. *See Castile v. Astrue*, 617 F.3d 923, 926 (7th Cir. 2010) ("A severe impairment is an impairment or combination of impairments that 'significantly limits [one's] physical or mental ability to do basic work activities.'") (quoting 20 C.F.R. § 404.1520(c)). The ALJ should have sought an updated opinion, particularly since the agency consultants explicitly premised their opinions on a lack of medical evidence. *See Goodrich v. Berryhill*, No. 4:18-CV-3-JEM, 2019 WL 459048, at \*9-10 (N.D. Ind. Feb. 5, 2019) (remanding for an updated opinion based on the new mental impairment criteria where

6

the ALJ "relied on [previous medical] opinions to make his step three finding" and the plaintiff presented significant new medical evidence); *see also Lambert v. Berryhill*, 896 F.3d 768, 774 (7th Cir. 2018) ("ALJs must rely on expert opinions instead of determining the significance of particular medical findings themselves.") (citing *Meuser v. Colvin*, 838 F.3d 905, 911 (7th Cir. 2016)).

This error also taints the RFC analysis. The ALJ found that Plaintiff could perform "simple and routine work not done at a production rate pace, and she can interact and react appropriately with supervisors and co-workers on a frequent basis and with the general public on an occasional basis." But the state agency consultants did not suggest any mental limitations in the RFC, having found Plaintiff's mental impairments non-severe. The only other medical opinion addressing Plaintiff's mental impairments came from the state's mental status examiner, who stated that Plaintiff's "attendance and productivity would likely be poor." The ALJ did not explain how he arrived at the RFC limitations, except to say that "the evidence reasonably supports" that Plaintiff could consistently do simple and routine work and interact frequently with co-workers and occasionally with the public. AR 19. Without a "logical bridge" from the evidence to these conclusions, the analysis is inadequate, and the decision must be reversed. *O'Connor-Spinner*, 627 F.3d at 618.

Because the decision is reversed, the Court considers whether to award benefits or remand the case for re-hearing by an ALJ. An award of benefits is appropriate if all factual issues have been resolved and the record supports a finding of disability. *Briscoe*, 425 F.3d at 356. In this case, the ALJ relied on outdated opinions in examining whether Plaintiff met the updated criteria for a listing, and crafted the mental limitations in the RFC without reference to any medical opinion. Although the ALJ failed to adequately develop the record, remand for benefits is not appropriate. *See Allord*

7

*v. Astrue,* 631 F.3d 411, 417 (7th Cir. 2011) (affirming reversal for re-hearing, rather than an award of benefits, where "contradictory inferences could be drawn from the physicians' testimony"); *Campbell v. Shalala*, 988 F.2d 741, 744 (7th Cir. 1993) ("the record is not so clear that we can award or deny benefits on appeal").

On remand, the Court directs the ALJ solicit an updated medical opinion addressing whether Plaintiff meets or medically equals Listing 12.04 or 12.06, and what limitations would be appropriate in the RFC. The Court reminds the ALJ to analyze Plaintiff's subjective complaints in the manner prescribed by SSR 16-3p, and draw a "logical bridge" between the evidence and his or her conclusions. In particular, if the ALJ draws a negative inference based on non-compliance with a treatment plan, he must inquire as to why treatment stopped and develop the record accordingly. *See* Social Security Ruling 16-3p, 2016 WL 1119029 (Mar. 16, 2016), at *8; *Craft v. Astrue*, 539 F.3d 668, 679 (7th Cir. 2008) ("[T]he ALJ 'must not draw any inferences' about a claimant's condition from this failure unless the ALJ has explored the claimant's explanations as to the lack of medical care.").

**IV.     Conclusion**

For the foregoing reasons, the Court hereby **GRANTS in part and DENIES in part** the relief requested in Plaintiff's Opening Brief [DE 25] and **REMANDS** this matter for further proceedings consistent with this opinion.

SO ORDERED this 27th day of July, 2020.

s/ John E. Martin
MAGISTRATE JUDGE JOHN E. MARTIN
UNITED STATES DISTRICT COURT

cc:     All counsel of record
        Plaintiff, *pro se*

8